## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VIKASH VIKASH, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )   Case No. CIV-26-816-J |
| | ) |
| WARDEN CHRIS GANTT,[1] | ) |
| et al., | ) |
| | ) |
| Respondents.[2] | ) |

## REPORT AND RECOMMENDATION

Petitioner Vikash Vikash, a noncitizen,[3] seeks a writ of habeas corpus under 28 U.S.C. § 2241. Doc. 1.[4] United States District Judge Bernard M. Jones, II referred the case to the undersigned Magistrate Judge for initial proceedings under 28 U.S.C. § 636(b)(1)(B), (C). Doc. 3. The Government

---

[1]   The Court replaces Scarlet Grant as a Respondent with current Warden Chris Gantt. *See* Fed. R. Civ. P. 25(d).

[2]   The Government did not file its response on Warden Gantt's behalf because he is not a federal official. Doc. 11, at 7 n.1.

[3]   This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

[4]   Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

responded, Doc. 11, and Petitioner filed a reply which the Court struck as untimely. Doc. 14. So the matter is at issue.

For the reasons below, the undersigned recommends the Court grant Petitioner's habeas petition and order his immediate release.

## I.    Factual background and procedural history.

Petitioner is a citizen of India who entered the United States without inspection on January 1, 2023. Doc. 1, at 2, 19; Doc. 11, Ex. 1. Upon arrival, a United States Customs and Border Patrol Agent arrested Petitioner. Doc. 1, at 19; Doc. 11, Ex. 1, at 2. He was then paroled into the United States under 8 U.S.C. § 1182(d)(5) "[d]ue to the backlog of cases [and] pending . . . initial enrollment" "as an Alternate to Detention (ATD)." Doc. 11, Ex. 1, at 2; *see* Doc. 1, at 4.

On March 17, 2023. the Department of Homeland Security (DHS) placed Petitioner into standard removal proceedings under 8 U.S.C. § 1229a by issuing him a Notice to Appear (NTA). Doc. 11, Ex. 2. DHS charged Petitioner under § 212(a)(6)(A)(i) and § 212(a)(7)(A)(i)(I)[5] of the INA as a noncitizen

---

[5]    These sections are codified at 8 U.S.C. §§ 1182(a)(6)(A)(i) and 1182(a)(7)(A)(i)(I). Section 1181(a)(6)(A)(i) provides that a noncitizen who is present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General are ineligible to be admitted to the United States. *Id.* § 1182(a)(6)(A)(i). Section 1182(a)(7)(A)(i)(I) provides that any noncitizen, who

2

present in the United States without being admitted or paroled. *Id.* Petitioner sought asylum on April 3, 2023, and that application is still pending. Doc. 1, at 19, Doc. 11, Ex. 3, at 2.

Petitioner states he has complied with all terms and conditions of his release. Doc. 1, at 3, 19-20. On March 11, 2026, an Oklahoma Highway Patrol Trooper arrested him during a traffic stop and transferred him to DHS custody. Doc. 11, at 14. Petitioner asserts he was detained despite no material change in circumstances, no arrest warrant, no notice of the revocation or expiration of his parole, and no pre-detention hearing. Doc. 1, at 19-20.

## II.    Petitioner's claims.

Petitioner raises three grounds for relief:

Ground One:  violation of his substantive due process rights under the Fifth Amendment;

Ground Two: violation of his procedural due process rights under the Fifth Amendment; and

Ground Three: violation of the INA.

Doc. 1, at 23-26. He seeks his "immediate release" under conditions no more restrictive than when he was arrested; a declaration that his arrest and

---

at the time of application for admission, was not in possession of (1) a valid unexpired entry document as required by the Immigration and Nationality Act (INA), and (2) a valid travel document/document of identity and nationality as required by regulations is inadmissible. *Id.* § 1182(A)(7)(A)(i)(I).

3

detention violate the Fifth Amendment and the INA; an order enjoining Respondents from detaining him under § 1226(a) unless he receives a custody hearing before a neutral arbiter in which the Government bears the burden to show by clear and convincing evidence that he poses a flight risk or a danger to the community; an order that Respondents may not rearrest him while his removal proceedings are ongoing unless there has been a material change in circumstances; and an award attorney's fees and costs under the Equal Access to Justice Act (EAJA). *Id.* at 26-27.

### III.    Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

4

## IV.   Discussion.

### A.   The Court has jurisdiction to consider Petitioner's claims.

Respondents argue Petitioner's statutory claim is "barred by the INA's jurisdiction channeling and stripping provisions. Doc. 11, at 15-16 (citing 8 U.S.C. § 1252(b)(9) & (g)). The Court should disagree.

This Court has consistently held that there is no jurisdictional bar to consideration of Petitioner's claims. *See, e.g.*, *Bernanke v. Noem*, No. CIV-26-103-D, 2026 WL 852092, at *1 (W.D. Okla. Mar. 27, 2026) ("[B]ecause Petitioner is challenging his order of detention, and not an order of removal, [§ 1252(b)(9)] do[es] not deprive the Court of jurisdiction." (citing *Jennings v. Rodriguez*, 583 U.S. 281, 291 (2018))); *Diaz v. Holt*, No. CIV-25-1179-J, 2025 WL 3296310, at *1 (W.D. Okla. Nov. 26, 2025) ("Because Petitioner does not challenge Respondents' decision to commence or adjudicate proceedings or execute removal orders, the Court concludes that § 1252(g) does not jurisdictionally bar his Petition.").

### B.   Petitioner is entitled to due process.

Section 1225(b)(1) provides that "[i]f an immigration officer determines that an alien . . . who is arriving in the United States . . . is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the

alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i). An individual detained as inadmissible upon inspection at the border can only be paroled into the United States "'for urgent humanitarian reasons or significant public benefit.'" *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)).

The parties agree Petitioner was temporarily paroled under § 1182(d)(5) after Border Patrol detained him. *See* Doc. 1, at 19; Doc. 11, at 13 & Ex. 1. DHS later placed him into standard removal proceedings. Doc. 11, Ex. 2. His removal proceedings are ongoing, but Respondents re-detained him in March 2026. Doc. 1, at 3.

Petitioner argues there was no reason to re-detain him and DHS violated its own regulations and his due process rights by arbitrarily revoking his parole before it expired and with no notice, no change in circumstances, and no hearing. *Id.* at 3-4, 8, 11-12, 19-20, 23-25. Respondents argue Petitioner's detention is mandatory under § 1225(b) and his re-detention does not implicate any due process rights. Doc. 11, at 19-20. The Court should agree with Petitioner.

"The Fifth Amendment's Due Process Clause forbids the Government to deprive any person of liberty without due process of law. Freedom from imprisonment—from government custody, detention, or other forms of physical

6

restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690 (internal quotation marks and alterations omitted); *cf. Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (internal quotation marks omitted)). Individuals who have been conditionally released from detention have a protected interest in their "continued liberty." *Young v. Harper*, 520 U.S. 143, 147 (1997). "This is true even when the released individual is subject to extensive conditions of release." *Villanueva v. Tate*, 801 F. Supp. 3d 689, 704 (S.D. Tex. 2025).

When the Government promulgates regulations "with the force and effect of law," agencies are bound to follow their own "existing valid regulations." *U.S. ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 265, 268 (1954). Pertinent here, "[t]he statutes and regulations governing immigration and removal proceedings afford important procedural safeguards to detainees." *Villanueva*, 801 F. Supp. 3d at 698-99.

### 1.    Statutory and regulatory framework.

When Border Patrol first detained Petitioner, he was "paroled" into the United States under § 1182. Doc. 11, Ex. 1, at 1-2.

Section 1182(d)(5) grants discretion to DHS officials to "parole into the United States temporarily under such conditions as [they] may prescribe only

on a case-by-case basis for urgent humanitarian reasons or significant public benefit any [noncitizen] applying for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). Any revocation of this parole must be based on a decision by a DHS official that either "the purpose for which parole was authorized" has been accomplished or that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 U.S.C. § 1182(d)(5)(A) (stating the DHS Secretary may revoke parole "when the purposes of such parole . . . have been served"); Doc. 1, at 4 (citing 8 C.F.R. § 212.5(e)(2)(i)). And the parole will be terminated only when "written notice" of this decision is served on the noncitizen. 8 C.F.R. § 212.5(e)(2)(i).

Respondents do not submit any information about the revocation of Petitioner's parole. Petitioner argues Respondents did not terminate it with written notice and it did not expire. Doc. 1, at 4; *see, e.g.*, 8 C.F.R. § 212.5(e)(1) (stating parole is automatically terminated without written notice "at the expiration of the time for which parole was authorized"). "[T]he applicable regulatory scheme requires that, where parole has automatically terminated upon expiration and the noncitizen is not returned to custody for either the timely execution of a removal order or upon an individualized decision by an authorized DHS official, continuation of humanitarian parole may be implied

8

and, thereafter, the procedures for on-notice termination apply." *Caisa Telenchana v. Hermosillo*, 2026 WL 696806, at \*7 (W.D. Wash. Mar. 12, 2026).

### 2. Respondents did not comply with the applicable regulations before revoking Petitioner's parole.

As stated, Respondents do not submit information about the revocation of Petitioner's parole. Since there was apparently no automatic termination through expiration, the procedures for "on-notice termination" applied. *Id.*

The undersigned finds that Respondents provided no notice to Petitioner about the termination of his parole when he was detained in March 2026, as § 212.5(e)(2)(i) requires. The lack of an individualized determination violated the regulations governing the termination of parole. *See, e.g., E-D-S-O- v. Hernandez*, 2026 WL 1067036, at \*4 (W.D. Wash. Apr. 20, 2026) ("Nothing in the record shows Respondents provided Petitioner with written notice of revocation of his humanitarian parole, that the original purpose of his parole was accomplished, or that a DHS official with authority determined 'neither humanitarian reasons nor public benefit' warranted continued parole."); *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 418 (S.D.N.Y. 2025) ("Respondents provide no indication that an individualized determination was made as to the revocation of Munoz Materano's parole; nor do they articulate, even now, either that the purpose for which Munoz Materano's parole was

9

authorized has been accomplished, nor that neither humanitarian reasons nor public benefit warrants his continued presence in the United States."); *see also Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1137-38 (D. Or. 2025) ("This is a grant of discretionary authority, but it has a mandatory requirement—parole may be terminated or revoked only when in the Secretary's opinion the parole's purposes have been met.").

### 3. Respondents violated Petitioner's due process rights by summarily revoking his parole.

This Court analyzes Petitioner's due process claim to determine whether he has a protected liberty interest under the Due Process Clause, and what process is necessary to ensure any deprivation of that liberty interest aligns with the Constitution. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). In examining the necessary process, the Court turns to the three factors set forth in *Mathews v. Eldridge*: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

10

"When the government grants [a noncitizen] parole into the country, it creates a liberty interest intimately tied to freedom from imprisonment." *Sanchez v. LaRose*, 2025 WL 2770629, at \*3 (S.D. Cal. Sept. 26, 2025); *see also Iza v. Arnott*, 2026 WL 67152, at \*3 (W.D. Mo. Jan. 8, 2026) ("Individuals released on parole or other forms of conditional release have a liberty interest in their 'continued liberty.'" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972))); *Sahil v. De Anda-Ybarra*, 2026 WL 560216, at \*3 (D.N.M. Feb. 27, 2026) (finding "that noncitizens acquire a liberty interest once released from immigration detention"). Petitioner's interest in physical freedom "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 (stating that an individual's interest in being free from detention "lies at the heart of the liberty that [the Due Process] Clause protects"). Respondents deprived Petitioner of his protected status when they revoked his parole and placed him in custody.

Turning to the *Mathews* factors, the Court finds that Petitioner has a significant private interest in remaining free from detention after spending three years on parole. By initially releasing Petitioner, the Government necessarily determined that he was "neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). Respondents have presented no evidence that there was a change in this assessment. To be sure, "Congress may make rules

as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003). But that power remains "subject to important constitutional limitations." *Zadvydas*, 533 U.S. at 695. And it does not erase Petitioner's significant interest in remaining free from detention.

Respondents do not suggest Petitioner violated any laws or conditions of his parole. During his parole, Petitioner's interest in release grew even stronger as he presumably "form[ed] the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. The first *Mathews* factor favors Petitioner.

Second, the Court considers "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. The risk of an erroneous deprivation of Petitioner's liberty interest is considerable where he has received no notice of the reason for his parole revocation and simple procedures exist which would mitigate those risks.

"Constitutionally inadequate notice also often leads to constitutionally inadequate opportunity to be heard, because opportunity to be heard must be meaningful to be constitutionally sufficient." *Saqib v. Andrews*, 2026 WL 350830, at *6 (E.D. Cal. Feb. 9, 2026), *adopted*, 2026 WL 440566 (E.D. Calif. Feb. 17, 2026). Respondents detained Petitioner with no procedural safeguards to determine whether the revocation of his parole and his detention were

justified. This factor weighs in Petitioner's favor. *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.").

Finally, the Court considers the Government's interest, including any fiscal or administrative burdens. *Mathews*, 424 U.S. at 335. "While this Court recognizes that the government has an interest in enforcing immigration laws, the government's interest in re-detaining [P]etitioner without adequate notice and an opportunity to challenge the revocation of his release is low." *Saqib*, 2026 WL 350830, at *6. And the Court can discern no significant administrative or fiscal burden associated with placing the burden on the government to follow its own regulations. *See, e.g.*, *Iza,* 2026 WL 67152, at *3 ("An alien's opportunity to be heard regarding the revocation of his parole is only meaningful if the government comports with its own internal standards regarding parole revocation."). Especially given that Petitioner's detention was not considered necessary for three years.

The undersigned concludes the Government breached its own regulations and violated Petitioner's due process rights when it summarily revoked his parole. Based on these findings, the undersigned recommends the

Court grant the habeas corpus petition and release Petitioner from detention subject to the same conditions that governed his earlier parole.[6]

## V.    Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court **grant** Petitioner's habeas petition and **order his immediate release subject to the same conditions that governed his earlier parole.[7] The undersigned also recommends that the Court order the Government to certify compliance by filing a status report within ten business days of the Court's order**, and to promptly provide a copy of this order to Counsel

---

[6]    This view is shared by numerous courts across the country. *See, e.g.*, *Ewere v. Cerna,* No. CIV-26-320-SLP, 2026 WL 1207088, at *1-2 (W.D. Okla. May 4, 2026) (ordering Petitioner's "immediate release" for due process violation and denial of a bond hearing); *Singh v. Noem*, 2026 WL 766228, at *10 (D.N.M. Mar. 18, 2026) ("Petitioner's . . . release is required to remedy the ongoing due process violation caused by Petitioner being detained while his conditional parole has not yet been terminated."); *Velasquez Montillo,* 2026 WL 592355, at *10 (concluding immediate release was the appropriate remedy where "there has been no notice of a change in circumstances requiring modification of the November 2021 [order of release on recognizance]"); *Vielma Uzcategui v. Brooksby,* 2026 WL 622751, at *13 (D. Utah Mar. 5, 2026) (same as to petitioner ordered released on her own recognizance in September 2023); *Murzi v. Noem*, 2026 WL 395111, at *2 (D. Colo. Feb. 12, 2026) (ordering petitioner's immediate release where petitioner had previously been released on parole).

[7]    Petitioner also requests an award of attorney's fees under the EAJA. Doc. 1, at 27. But he must seek those separately after a final judgment. 28 U.S.C. § 2412(d)(1)(B).

for the Warden of the Cimarron Correctional Facility. Finally, the Court should order that Respondents cannot re-detain Petitioner without notice and a pre-deprivation hearing before a neutral decision-maker.

The undersigned advises Respondents of their right to file an objection to this Report and Recommendation with the Clerk of this Court by July 6, 2026, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.[8] The undersigned further advises Respondents that failure to make timely objections to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

---

[8]     Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process").

**ENTERED** this 30th day of June, 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE